**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ROBERT R. RASMUSSEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 3156 |
| | ) |
| THE CITY OF LAKE FOREST, | ) Judge Rebecca R. Pallmeyer |
| an Illinois municipal body politic, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert R. Rasmussen (hereinafter "Plaintiff" or "Rasmussen") purchased property within the City of Lake Forest (hereinafter "Lake Forest" or "Defendant") in 1963 and built a residence there. In this suit, Rasmussen claims Defendant violated his rights by allowing construction on neighboring property that impeded the natural drainage of rainwater and runoff, resulting in pooling of water and flooding on Rasmussen's property. He seeks recovery under theories of denial of equal protection of the law and an unconstitutional taking of property without just compensation, and seeks a mandamus, mandatory injunction, and damages. Defendant has moved to dismiss the complaint and, for the reasons explained here, the motion is granted.

## FACTS

Rasmussen is an Illinois resident who resides in the City of Lake Forest in Lake County, Illinois. (Compl. ¶ 1.) In 1963, Rasmussen purchased property at 1120 South Grandview Lane in Lake Forest (the "Rasmussen Property") in 1963, and shortly thereafter built a residence. (*Id.* ¶¶ 5-6.) At the time Rasmussen acquired his property, a natural drainage course ran across it, directing rainwater and other run-off through the Rasmussen property and then to the property directly south at 1144 South Grandview Lane. From there, the rainwater and runoff emptied into the North Branch of the Chicago River. (*Id.* ¶¶ 7-9.)

At some point after Rasmussen built his residence (he does not say when), the City of Lake

Forest "participated in and allowed the erection of fill and structures" on the property south of Plaintiff's land. (*Id.* ¶ 10.) Plaintiff alleges that a "substantial part of the fill" came from dirt and soil that had been removed during the construction of improvements on South Grandview Lane. (*Id.* ¶ 11.) He alleges that the obstruction blocked the drainage course that had existed and effectively created a dam on the neighboring property, causing surface waters to back up and pool onto the Rasmussen property. (*Id.* ¶ 12.) According to Rasmussen, the City of Lake Forest knew at the time the obstruction was built that a natural drainage course existed and would be destroyed, resulting in harm to the Rasmussen property. (*Id.* ¶¶ 13-14.) Rasmussen alleges that this pooling of water, occurring as recently as May 13, 2010, has resulted in serious damage to the lower level of his residence. (*Id.* at ¶¶ 17-18.)

In 2002, Rasmussen filed a complaint in state court against the City of Lake Forest, seeking injunctive relief and monetary damages for the injury caused by the obstruction to the natural water flow. (Rule 23 Order, Ex. A to Pl.'s Resp. to Def.'s Mot. to Dismiss (hereinafter "Plaintiff's Resp.") at 2.) In that 2002 lawsuit, in which Rasmussen alleged that the City's negligence resulted in flooding of his property, he prevailed and won an award of damages. (*Id.* at p. 1.) Rasmussen asserts that in the course of that earlier court action, he advised the City of Lake Forest that unless the dam was "breach[ed]" and "culverts or other channels of adequate size" were installed, water would again pool and collect on his property and he would suffer further property damage. (Compl. ¶ 19.) On May 13, 2010, as he predicted, Rasmussen's property was again damaged when surface waters ponded as result of the obstruction. This lawsuit, filed in federal court on May 11, 2011, followed.

Rasmussen's complaint alleges violations of the U.S. Constitution: denial of equal protection of the law (Count I) and a taking of his property without just compensation (Count II). He asks the court for an order of mandamus requiring Defendant to restore that natural drainage course from his property, for mandatory injunctive relief in the form of removing the obstruction and installing

2

a drainage system, and for monetary damages (Counts III, IV, and V, respectively).

## DISCUSSION

**I.     *Res Judicata* Bar to Equal Protection Claim**

In its brief supporting its motion to dismiss, Defendant argues that the Plaintiff's claims must be dismissed because they are barred by *res judicata*. (Def.'s Mem. in Supp. of Mot. to Dismiss (hereinafter "Def.'s Mem.") at 3.) In determining whether a previous proceeding raises a *res judicata* bar, this court applies the preclusion law of Illinois, the state that rendered the judgment. *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011); *see also* 28 U.S.C. § 1738. In Illinois, a final judgment on the merits rendered by a court of competent jurisdiction constitutes "an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 389, 757 N.E. 2d 471, 477 (2001). In order for *res judicata* to apply, there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of the parties or their privies. *Id.*; *see also Licari v. City of Chicago*, 298 F.3d 664, 666 (7th Cir. 2002). This bar precludes further litigation not only of every matter that *was* offered to sustain or defeat the claim in the first instance, but also any other matter that *might* have been offered as well. *Nowak*, 197 Ill. 2d at 389, 757 N.E.2d at 477 (citing *Housing Auth. v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251-52, 461 N.E.2d 959, 962 (1984)).

The parties in this case disagree on whether the second prong of this test—identity of the cause of action—has been satisfied. To make this determination under Illinois law, the court uses a "transactional test," and will find that separate claims in fact constitute part of the same cause of action, for *res judicata* purposes, "if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311, 703 N.E.2d 883, 893 (1998).

Rasmussen alleges that the City denied him equal protection by intentionally treating him

3

differently from other owners of similar property, with no rational basis for this unfavorable treatment. (Compl. ¶¶ 27-29.) He argues that the City's actions were "intentional and geared towards 'getting' at [him]," (Pl.'s Resp. at 2), and that the City has not treated similarly situated individuals in the same manner. (*Id.* at 3.) On numerous occasions, he asserts, the City of Lake Forest prohibited the erection of structures that would block natural drainage courses on other properties similar to his, pursuant to ordinances regulating this activity. (Compl. ¶¶ 23-26.)

In other words, the alleged cause of action for this equal protection claim is Lake Forest's failure to stop the obstruction from being built on the neighboring property. This cause of action not only "arises from the same group of operative facts" as Rasmussen's first suit, but rests on the very same facts he presented in that earlier action. Thus, in his state court complaint, Plaintiff alleged that the City of Lake Forest had damaged his property by "deposit[ing] fill on the neighboring property . . . thereby obstructing the natural flow of water." (Ex. A to Pl.'s Resp. at 2.) Nothing prevented Plaintiff from pursuing an equal protection claim in 2002 when he filed his first suit against the City, another factor relevant to the *res judicata* analysis. *See River Park*, 184 Ill. 2d at 318, 703 N.E.2d at 896 (plaintiffs' unsuccessful federal court due process challenge to a zoning decision barred their state law claims challenging that same decision); *cf. Nowak*, 197 Ill. 2d at 388-89, 757 N.E.2d at 476-77 (previous federal court decision dismissing plaintiff's federal claim and relinquishing jurisdiction over his state law claims does not bar relitigation of state law claims in state court).

In sum, Plaintiff's equal protection claim must be dismissed because it arises from the same group of operative facts as his first lawsuit and is not dependent on any action taken by the Defendant subsequent to the first judgment. Here, Rasmussen claims that the City violated his rights by allowing the obstruction to be built in the first place.[1] Because Rasmussen challenged that

---

[1] Plaintiff describes the equal protection violations in the past tense rather than as
(continued...)

action in his original case and could have presented his equal protection theory at that time, this claim is barred under Illinois principles of claim preclusion. Count I is dismissed.

## II.     *Res Judicata* and "Ripeness" Bar to Plaintiff's Taking Claim

### A.     No *res judicata* bar to claims arising from Defendant's current conduct.

Before proceeding to the merits of the Plaintiff's takings claim, this court first considers whether *res judicata* bars that claim in its entirety as well. Under the rationale explained earlier, the *res judicata* doctrine would bar Rasmussen from proceeding on his unlawful takings claim, to the extent that claim challenges Lake Forest's decision to allow the obstruction on the neighboring property. Construed in the most generous light, however, Rasmussen's unlawful taking claim also alleges that Lake Forest is currently engaged in a violation of Plaintiff's rights. (Compl. ¶ 36 ("The *continuing* invasion of the Rasmussen Property by drainage water that is blocked . . . because of the actions of The City of Lake Forest constitute[s] an unlawful taking." (emphasis added).)

Rasmussen contends that the flooding of his property is a continuing injury and that a new cause of action is established each time the injury occurs, making this claim independent of the earlier judgment. (Pl.'s Resp. at 5-6.) He argues that his taking claim survives the *res judicata* analysis because the facts that form this claim, namely the flooding on May 13, 2010, occurred after the first judgment and could not have been sued upon at that time. (*Id.* at 5.) In support of this argument, Plaintiff cites *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955), where the Court concluded that *res judicata* does not extinguish claims that did not exist at the time of the earlier judgment and "could not possibly have been sued upon in the previous case." In that case, the plaintiffs initially sued defendant for violations of federal antitrust laws based on a conspiracy

---

[1](...continued)
ongoing violations. *See e.g.,* Compl. ¶ 28 ("The City . . . intentionally *treated* Plaintiff differently . . . ."); *id.*¶ 29 ("There *was* no rational basis for the disparate treatment that the City *afforded* Plaintiff . . . ."); *id.* ¶ 31 ("The City's disparate treatment of Plaintiff *occurred* under color of state law . . . .") (emphasis added).

5

to establish a monopoly, but that suit was settled prior to any trial.  *Id.* at 324.  Six years later, plaintiffs filed a second suit, again alleging a conspiracy to exploit monopoly power but now adding five additional defendants and additional antitrust claims not presented in the first action.  *Id.* at 324-25.  The Third Circuit affirmed dismissal of the suit as barred by *res judicata* because it involved "essentially the same course of wrongful conduct," but the Supreme Court overturned that determination, emphasizing that the conduct complained of in the second suit had occurred after the entry of the first judgment.  *Id.* at 326-28.

Plaintiff also relies on *Raabe v. Messiah Evangelical Lutheran Church*, 245 Ill. App. 3d 539, 544, 615 N.E.2d 15, 19 (3d Dist. 1993), where the Illinois appellate court held that a cause of action arises from a continuing nuisance each time the nuisance results in fresh injuries.  Defendant urges that *Raabe* does not address the *res judicata* doctrine; instead, Defendant contends, that case merely stands for the rule that each recurring injury from a continuing nuisance refreshes the statute of limitations and provides a new cause of action for which the plaintiff may file his *first* lawsuit.  (Def.'s Reply at 2.)  *Raabe* did in fact address the statute of limitations, but other Illinois courts have interpreted the *Raabe* decision as support for the proposition that "a defendant's continuing course of conduct, even if related to conduct complained of in an earlier action, creates a separate cause of action."  *See D'Last Corp. v. Ugent*, 288 Ill. App. 3d 216, 222, 681 N.E.2d 12, 17 (1st Dist. 1997).  Although the *D'Last* court affirmed a *res judicata* dismissal of claims arising from conduct that occurred before the plaintiff's earlier lawsuit had been dismissed, the court acknowledged that "*res judicata* does not bar claims for continuing conduct complained of in the second lawsuit that occur after judgment has been entered in the first lawsuit."  *Id.*  If this were not the case, defendants who repeatedly cause injury through continuing nuisances would effectively have immunity from liability for future violations if a plaintiff did not successfully obtain injunctive relief in the initial suit.

In this court's view, *res judicata* bars a claim that Lake Forest's failure to prevent the obstruction on the neighboring property constitutes an unlawful taking. Such a claim was available to the Plaintiff at the time of the first suit. The *res judicata* doctrine does not, however, bar a claim that the *continuing* invasion of water on his property, created by the city's *inaction* subsequent to the first suit, constitutes an unlawful taking.[2] Rasmussen's takings claim, based on Lake Forest's conduct after entry of judgment in the first lawsuit, thus survives the *res judicata* bar.

**B.     Rasmussen's Fifth Amendment takings claim is not sufficiently "ripe."**

The Takings Clause of the U.S. Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. Any situation that involves a permanent physical occupation of one's land constitutes a *per se* taking. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982); *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 958 (7th Cir. 2004). Cases that involve only temporary invasions of one's property or government action on one's property that causes consequential damages, however, are distinguishable. *Loretto*, 458 U.S. at 428.

Plaintiff's allegations suggest that the flooding on his property that has resulted from the presence of the obstruction on the neighboring property is not a permanent condition, but a recurring one. (Pl.'s Resp. at 3 (stating that "the recurring nature of his injury brings a new harm to Mr. Rasmussen each time his property is flooded").) Rasmussen has a claim only if he has suffered what amounts to a regulatory taking, that is, a deprivation of "all economically beneficial or productive use of the land" as the result of a regulatory decision. *Muscarello v. Ogle Cnty. Bd. of Comm'nrs,* 610 F.3d 416, 421 (7th Cir. 2010) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992)).

---

[2]     The court recognizes the possibility that Plaintiff anticipated future flooding when he filed his original lawsuit, and that the lost-property-value measure of damages he sought there (or the requested injunction) was intended to compensate him for such losses. Defendant has not so argued, however, and the court declines to make that argument for the City.

Before determining the sufficiency of the these allegations, however, the court must first address a jurisdictional issue. It is well settled that a federal court may adjudicate a Fifth Amendment takings claim involving local or state regulatory decisions only after (1) the relevant regulatory agency has had an opportunity to make a final decision on the dispute, and (2) the property owner exhausts all available state remedies for compensation. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) (citing *Williamson Cnty Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-95 (1985)). This "ripeness" doctrine is drawn from both Article III limitations on judicial power and prudential reasons for refusing jurisdiction until just compensation has been refused. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n.7 (1997); *Williamson Cnty*, 473 U.S. at 194-95.

Rasmussen's regulatory takings claim is based on his assertion that the city "fail[ed] to enforce numerous City ordinances" enacted to protect properties such as his own from interference with water runoff (Compl. ¶ 16(c)), and that the City's failure functions to deprive the Plaintiff of his property without just compensation. (*Id.* ¶ 37.) Rasmussen has not demonstrated in his pleading, however, that he has challenged Lake Forest's *continued* allowance of this obstruction, or that he has exhausted all state remedies for this *continued* flooding, subsequent to his previous state court judgment.

As explained earlier, the flooding that occurred subsequent to that first judgment may support a new cause of action independent from the first suit. Because the City has not argued otherwise, the court assumes that Rasmussen's previous suit in state court did not effectively challenge the City's ongoing conduct in allowing the obstruction. Accordingly, that earlier lawsuit did not function as a mechanism for exhaustion of state remedies for this subsequent claim. The first suit sounded in negligence and trespass related to the construction of the obstruction on the neighboring property and the City's sanitary sewer system. (Rule 23 Order, Ex. A to Pl.'s Resp. at 2-3.) It appears that Plaintiff has yet to challenge through any state channels the continued

presence of the obstruction on the neighboring property as a violation of his Constitutional rights. Assuming, as explained earlier, that *res judicata* does not bar Plaintiff's claim for relief from the City's inaction that post-dated his earlier lawsuit, Plaintiff is not barred from seeking a local or state remedy for that inaction.

The court recognizes that there is a "futility" exception to the ripeness doctrine. Under that exception, a plaintiff need not exhaust his state remedies before seeking relief in federal court, if he can show that those state remedies are either unavailable or inadequate. *Williamson Cnty*, 473 U.S. at 197. Rasmussen has not alleged facts to show his case falls into that exception, however. The burden of demonstrating that state remedies have been exhausted prior to filing a federal takings claim rests with the plaintiff. *Peters v. Vill. of Clifton*, 498 F.3d 727, 733 (7th Cir. 2007). In this case, Rasmussen has done no more than to assert that the recurring invasion of water on his property constitutes an unlawful taking under state law and that he is "without an adequate remedy at law for these continuing trespasses." (Compl. ¶ 21, ¶¶ 36-38.) There is no allegation that state remedies have been exhausted, and the court is unprepared, on this record, to conclude that such remedies would be inadequate or futile. (The fact that Rasmussen prevailed in his earlier state law case militates against such a conclusion.) Without such a showing, the takings claim is not "ripe" for the exercise of this court's jurisdiction. *Forseth*, 199 F.3d at 368.

The court concludes that before seeking relief in federal court for the continued flooding of his property, Rasmussen is required first to seek a remedy through state channels, or demonstrate that no such remedy is available to him. His takings claim (Count II) is dismissed without prejudice.

### III.    Counts III through V Are Dismissed

Rasmussen's remaining claims include (1) a petition for mandamus (Count III); (2) a request for mandatory injunctive relief (Count IV); and (3) money damages and attorney's fee (Count V). The parties appear to understand those counts to present state law claims. (Compl.¶ 3 (court has supplemental jurisdiction over Counts III, IV and V); Def.'s Mem. at 12 (arguing that "Plaintiff's state

claims for injunctive relief and damages in Count II-V are barred under [state governmental immunity law]."). Defendant urges that after dismissing the federal law claims, the court relinquish jurisdiction over state law claims. As the court reads these counts, they present requests for relief from the purported federal violations, not claims arising under state law. Regardless of this characterization, Defendant is correct that dismissal of the federal claims requires dismissal of Counts III-V without prejudice, as well.

## **CONCLUSION**

*Res judicata* bars the Plaintiff's equal protection claim because it derives from the same group of operative facts as a previous claim against the same Defendant in which judgment was rendered. The Plaintiff's unconstitutional takings claim is partially barred for the same reason, and what remains must be dismissed because it is not yet sufficiently ripe for federal adjudication. The motion to dismiss [8] is granted.

ENTER:

Dated: January 30, 2012

_____
REBECCA R. PALLMEYER
United States District Judge